Shelton M. ESTES, R. K. Johnson, D. D. Tillson, C. R. McLain, Gilford Clark, M. J. Hammonds and E. H. Hartley, Plaintiffs in Error,

v.

J. S. TOMPKINS, Johnnie Worrell, Jr., H. R. Holder, Sam Ward, Don Baird, Harold A. Young, J. A. Blankenship, Hal B. Pratt, Pat Mitchell, B. F. Dillon, C. C. Huffines, N. T. Damron and N. J. Craighead, Defendants in Error.

No. 39141.

Supreme Court of Oklahoma.

Feb. 20, 1962.

Rehearing Denied March 27, 1962.

Application for Leave to File Second Petition for Rehearing Denied May 8, 1962.

Leon S. Hirsh, David C. Shapard, Dave K. Spradling, Oklahoma City, for plaintiffs in error.

Russell B. Holloway, Oklahoma City, for defendants in error.

HALLEY, Justice.

A voluntary unincorporated association known as International Union of Operating Engineers Local No. 670 (herein-

after, the Local) met at one of its regular meetings on August 26, 1958, and voted to set aside to the Southern Oklahoma Labor Associates Trust (hereinafter, the Trust) certain described funds and property, both real and personal, of a value of several thousand dollars. This suit was brought by the plaintiffs, members in good standing of the Local, for themselves and other members who are or may be similarly situated for the return of such funds and property to the Local. Defendants comprise a part of the Board of Trustees of the Trust. After trial the court granted the relief prayed for and defendants filed a motion for new trial which was overruled. Defendants appeal from the judgment and order overruling the motion for new trial.

Although defendants allude in their brief to procedural errors committed by the trial court, they abandon such claimed errors and rely for reversal on the sole ground that the trust created was definite in both purpose and beneficiaries and therefore the trial court had no ground on which to find that it was "illegally created." ·

■ Plaintiffs tacitly concede that the trust purpose and beneficiaries are sufficiently definite in order that a valid trust may exist, if it were in fact legally created; but plaintiffs contend that the transfer or setting aside of the property to the trust by the Union was illegally done and that therefore the trust was illegally created. No findings of fact or conclusions of law were requested by the parties in this matter. Since this is a suit of equitable cognizance, we will weigh the evidence and we will not set aside the judgment unless it is against the clear weight of the evidence.

The Local's by-laws provide that its purposes are to improve and elevate the economic welfare of *its* members, to cultivate successful and friendly industrial relations with those who employ *its* members, and to assist in organization so that *they* (the members) may consummate contractual relations with their employers. The purposes of the Trust, on the other hand, were very broad and as defendants state the Trust purpose in their brief, it is:

"Obviously it is for the advancement of the welfare of laboring people and sufficient powers are given to the trustees to enable them to select the projects best adapted to that end."

The beneficiaries of the Trust were also described in general terms, being all those persons who offer their labor for hire in Oklahoma.

■ We hold that a meeting of an unincorporated voluntary association which gives or sets aside most of the property of the association to an irrevocable charitable trust with such broad purposes and beneficiaries as stated above, is transacting business of an extraordinary nature. That being true we must look to the by-laws of the Local to see what notice must be given to the members concerning a meeting of this kind, and we must look at the evidence to see what notice was actually given.

The Local's by-laws pertaining to meetings and notice thereof are as follows:

"*Article IV*

"Section 1.

"Local '#670 shall meet in General Meeting at regular intervals, which shall not be less than one each month. The meeting shall be held at a time and place designated by the President of Local #670. All business concerning the entire Local shall be conducted at this meeting.

"Section 2.

"Departmental meeting shall be held at the time and place designated by the Chairman of the particular department and all the departmental business shall be conducted at these meetings.

"Section 3.

"Special meetings of the Local may be called by the President of Local #670, at any time he deems necessary; at the written request of the Executive Board. Notice of special meetings shall be given the general membership

sufficiently in advance to permit attendance. No business other than that for which the meeting is called, shall be transacted at such special meetings.

"Section 4.

"Quorum for the transaction of any business in meetings shall not be less than seven members in good standing.

"Section 5.

"Business of a general nature and affecting the entire Local Union, shall be conducted at the General Meetings. Any and all business restricted to and concerning a specific department, shall be transacted at the departmental meetings. On a motion duly made, seconded and passed by a majority vote of those present shall suffice to dispose of business matter not otherwise restricted by these By-laws, the Constitution of IUOE or Roberts Rules of Order.

"(a) Restrictions:

"1. Amendments to the By-Laws.

"2. Strike Vote.

"3. Assessments or a change in the amount of membership dues.

"4. Donations to Charity in excess of twenty-five (25) dollars.

"Section 6.

"Parliamentary authority in conducting meetings of Local #670 shall be Roberts Rules of Order."

The minutes of the general meeting of the Local which met on. April 22, 1958, state that a motion carried whereby the Local's officers were empowered to take steps to preserve the property and assets of the Local "for the use and benefits of the membership" of the Local. The minutes of the meeting of the executive board of the Local, which met on July 15, 1958, state practically the same thing. Then at a special meeting of the executive board of the Local on July 30, 1958, the Trust agreement and indenture was signed on behalf of the Local by three officers and three trustees. The minutes of the general meeting of the Local which met on August 26,

1958, show that a motion was passed that the Local "turn over, contribute, give, and donate" to the Trust the property involved in this controversy. The motion also stated that the acts of the executive board of the Local were "approved, confirmed and adopted and made the official action" of the Local. The vote on the motion was recorded as: "34 for the motion, None (0) against motion. Motion in full Passed."

The evidence showed that the number of members of the Local fluctuated but that in August, 1958, there were over 700 members.

Plaintiffs' attorney called one of the defendants as a witness to prove the notice that was given to the members of the Local prior to the meeting of August 26, 1958. The witness was president of the Local at the time of trial and was during July and August, 1958, one of the vice-presidents of the Local. This is the only evidence in the record concerning notice and it is as follows:

"Q. I'll ask you first of all whether there was any advertisement that this membership meeting would consider the giving and donating and contributing of this property to the so-called Trust?

[Objection made and overruled.]

"Q. Go ahead. Was the meeting advertised for that purpose?

"A. The meeting was advertised to all men to be there. To the best of my knowledge, they didn't say what it was for but to be sure and be there.

"Q. Is that true of your membership meetings generally? All men are urged to be there?

"A. That's right.

"Q. And this was no different from the usual one with reference to the advertisement—to what they were told was going to go on there? Is that so?

"A. That's so."

*    *    *    *    *    *

"Q. Were you at that time an officer of the Local Union?

"A. I was.

"Q. Did you advertise your knowledge to the general membership of your Local Union?

"A. I told each one of them to be there.

"Q. Did you advertise your knowledge that the purpose of the meeting was to vote on this business of giving all their property away?

"A. No."

In Stone v. Dean, Okl., 344 P.2d 649, we held in the syllabus:

"1. The by-laws of a voluntary association constitute a contract between the members, on which each member can rely.

"2. A voluntary association in giving notice to its patrons of a regular annual meeting must give the time, manner and purpose of the meeting if any of the business to be transacted is of an extraordinary nature, such as a merger, as otherwise the members of the association may properly assume that only ordinary business is contemplated for a regular meeting, and a failure to do so voids an attempted merger as such action is ineffectual to constitute a merger, and may be enjoined."

In the instant case sufficient notice was not given concerning the time, manner and purpose of the meeting where it is shown that business of an extraordinary nature, that is giving most of the property of the Local to an irrevocable charitable trust, was to be transacted.

The evidence amply supports the judgment of the trial court that the Trust in this case was illegally created, and the judgment ordering the return of funds and property from the Trust to the Local is affirmed.

WILLIAMS, C. J., and DAVISON, JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.